❒ Original

**CLERK'S OFFICE**
**A TRUE COPY**
Sep 29, 2022
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    22    MJ    167 |
| Information associated with illdreams88@gmail.com (the | ) | |
| "account"), that is stored at premises owned, maintained, | ) | |
| controlled, or operated by Google, LLC, as further described in | ) | |
| Attachment A. | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    10/9/2022    *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. William E. Duffin    .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*    ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:    9/29/2022 at 9:35 AM

*Judge's signature*

City and state:    Milwaukee, Wisconsin      Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

1.      This warrant applies to information associated with illdreams88@gmail.com (the "account"), from June 1, 2021, to present, that is stored at premises owned, maintained, controlled, or operated by Google, LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.     Information to be disclosed by Google, LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 21, 2022, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:.

a.     The contents of all emails associated with the accounts, from June 1, 2021 to the present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account status', alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.    All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken.

Google, LLC is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant

**Information to Be Seized by the Government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine), those violations involving Antonio LONG, from June 1, 2021, to the present, including for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)    Evidence indicating violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine);

(b)    Evidence indicating preparatory steps taken in furtherance of the criminal scheme under investigation;

(c)    Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(d)    Evidence indicating the email account owner's state of mind as it relates to the crimes under investigation;

(e)    The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s);

(f) The identity of the person(s) who communicated with the user IDs: illdreams88@gmail.com about matters relating to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Sep 29, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of                )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information associated with illdreams88@gmail.com (the "account"), )
that is stored at premises owned, maintained, controlled, or operated )
by Google, LLC, as further described in Attachment A. )

Case No.  22  MJ  167

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 846 | Conspiracy to distribute cocaine and distribution of cocaine. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Curt R Hansen*

*Applicant's signature*

HSI SA Curt Hansen

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date:  9/29/2022

*William E. Duffin*

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, HSI Special Agent Curt Hansen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google LLC (hereafter "Google") to disclose to the government records and other information, including the contents of communications, associated with the Google Account identified on Attachment A, that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheater Parkway, Mountain View, CA 94043. The information to be disclosed by Google and searched by the government is described in the following paragraphs and in Attachments A and B.

2.      I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin.  I have been employed with HSI as a Special Agent for approximately a year and a half.  Prior to employment with HSI, I worked as a Deputy United States Marshal, Federal Air Marshal, and United States Border Patrol Agent. I have been a sworn federal law enforcement officer specifically investigating crimes involving narcotics, firearms, smuggling, terrorism, and immigration since September 2011. Throughout my law enforcement career, I have received training in general law enforcement and in specialized areas including narcotics and human smuggling. I am an investigator or law enforcement officer of the United States within the meaning of Title 8, United States Code, Section 1357(a)(5), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, certain

offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code, and other related offenses. Since becoming employed as a federal agent, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. As part of my duties and responsibilities as an HSI Special Agent, I am authorized to investigate crimes that involve narcotics violations pursuant to Title 21, United States Code.

3.      As part of my duties as an HSI Special Agent, I have experience conducting criminal investigations involving narcotics, firearms, gangs, and human smuggling and have participated in the execution of search warrants in such investigations. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Throughout this affidavit, reference will be made to case agents or investigators. Case agents or investigators are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine) have been committed, are being committed, or will be committed by Antonio LONG, and others. There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and

2

will lead to the identification of individuals who are engaged in the commission of these offenses.

6.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.     The United States, including HSI, is conducting a criminal investigation of Antonio LONG, Brian WILBERT, John MARIN, Bobby PERRY, and others regarding violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine**).**

8.     In August 2022, HSI Milwaukee, Milwaukee Police Department Violent Crimes Unit (MPDVCU), along with members of DEA Group 68 initiated an investigation into individuals distributing cocaine throughout Milwaukee, Wisconsin.   HSI identified the individuals involved in this cocaine drug trafficking as, among others, Antonio LONG, Brian WILBERT, John MARIN, and Bobby PERRY.

9.     On August 9, 2022, Milwaukee Police Department Violent Crimes Unit (MPDVCU) District 3 executed a Wisconsin state search warrant issued by the Circuit Court of the 1st Judicial District of Wisconsin at 5709 North 78th Street, Milwaukee, Wisconsin.  The occupants of the residence were not present during the execution of the search warrant.  During the search of the residence, Officers from MPDVCU located and seized crack cocaine, marijuana, psilocybin, two handguns (Glock 19 and Sig P365), various ammunition with high-capacity magazines, high dollar jewelry items, and $10,076.00 in US currency.   A black

3

Samsung smartphone was also seized. MPDVCU also seized various scales with narcotic residue on them as well as other narcotic related paraphernalia. Officers of the MPDVCU seized bank documents and invoices that displayed large currency transactions for jewelry, automobiles, and transfers of currency. MPDVCU located documents that indicated the target for the search warrant had a storage unit at W135N8945 Wisconsin 145, Menomonee Falls, Wisconsin in Waukesha County, Wisconsin.

10. MPDVCU subsequently applied for and obtained an additional Wisconsin state search warrant for storage unit number 515 at W135N8945 Wisconsin 145, Menomonee Falls, Wisconsin. The search warrant was executed at approximately 8:00 p.m. on August 9, 2022. During the search of the storage unit, officers from the MPDVCU located 21 clear corner cut plastic baggies containing cocaine and five pressed bricks of a cocaine. A combined total of 5.8 kilograms of cocaine was present. MPDVCU officers located 20 large vacuum sealable plastic bags containing marijuana with a total weight of 18.7 pounds. A .9mm Palmetto State Armory AR-15 (AR Pistol) and a Maverick model 88 12-gauge shotgun with sawed off barrel were located within the storage unit. MPDVCU also located and seized $39,610 in US currency from the unit. All items were seized and inventoried by MPDVCU.

11. On August 18, 2022, the MPDVCU requested assistance from HSI Milwaukee and DEA Group 68 to assist with the investigation. Through information obtained from a confidential source (CS #1), historical law enforcement records, electronic surveillance, toll record analysis, social media exploitation, and open-source databases, HSI Special Agents and MPDVCU Officers determined the source of supply for the cocaine that was seized is the Antonio LONG drug trafficking organization (DTO). This DTO is headed by Antonio LONG, who orchestrates the distribution of kilogram quantities of cocaine across the state of Wisconsin.

4

Investigators have determined that LONG and his DTO obtain and distribute as many as 30 kilograms of cocaine monthly to the Milwaukee, Wisconsin area.

12.     For several reasons, case agents believe that CS #1 is reliable and credible. First, CS #1 has been providing information since August of 2022.   Second, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information has been corroborated through independent investigation.   CS #1 is cooperating for consideration on state drug trafficking charges.   CS #1 has prior felony convictions for robbery and a weapons violation.  Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.   For these reasons, case agents believe CS #1 to be reliable.

13.      CS #1 told case agents that the cocaine is transported via a white Ford Transit van concealed in furniture or within a trap built into the vehicle's floor.  The white Ford Transit van bearing Arizona license plate number Z6A6CAA, is registered to Brian WILBERT.  CS #1 stated that WILBERT is the primary source of transportation for the LONG DTO.  WILBERT is the cousin of LONG and has a residence in Gilbert, Arizona.  CS #1 stated that upon receipt of the cocaine, the LONG DTO sells the cocaine by the kilogram, frequently making multiple kilogram sales per customer.  The LONG DTO has been actively operating in the Milwaukee area for approximately five years.

14.      CS #1 stated that she/he regularly communicates with WILBERT through cellular telephones to coordinate delivery of narcotics over the past five years.  WILBERT would contact CS #1 to coordinate the "drop" of cocaine and marijuana.  Shipments of cocaine and marijuana were delivered to locations in Milwaukee, Wisconsin monthly and on several

5

occasions' biweekly for the last five years. Throughout the duration of the shipment, CS #1 WILBERT, and LONG would maintain contact to ensure delivery of the narcotics.

15.     On September 7, 2022, HSI and DEA Group 68 conducted a forensic analysis of the cellular telephone that was seized from the search warrant conducted at 5709 North 78th Street, Milwaukee, Wisconsin. A review of the SMS text messages revealed conversations between CS #1 and LONG. The text thread covered a period of the past four months and detailed conversations between CS #1 and LONG discussing the transportation and sale of narcotics. LONG frequently sent text messages highlighting when shipments, transported by WILBERT, of cocaine and marijuana were to be sent to CS #1. LONG regularly discussed the need to deliver more kilograms of cocaine and would also notify CS #1 when packages of the narcotics proceeds were to be sent back to Los Angeles, California. The text messages indicate that LONG supplies and directs the shipments of cocaine.

16.     The proceeds from narcotics sales are collected by CS #1 and mailed via FedEx. Listed on the shipping contents of the package are high-dollar jewelry items, for example Rolex watches. CS #1 has acknowledged to have mailed upwards of $275,000 at one time. LONG emails CS #1 invoices stating how much payment are due for the cocaine. The invoices have jewelry listed as the purchase item along with the fee listed for them. The affiant viewed the emails provided by CS #1. LONG is listed as the sender along with his email address of illdreams88@gmail.com. CS #1 was receiving an invoice from LONG approximately every week from LONG's email address. The invoices have the following businesses listed: JM Time Corp., Virgo Stones Jewelry Company, Ortho Lab, International Players Club Inc. (also IPC Jewelry), and Prestige Fine Metals. CS #1 detailed how jewelry is being used as code for the cocaine on the invoices to give the impression of a legitimate business transaction. After

6

receiving the invoice, CS #1 will package currency in FedEx boxes with a preprinted shipping label. CS #1 was being emailed preprinted shipping labels from LONG. From the present back to most of 2021, the recipient listed on the preprinted shipping labels was listed as John MARIN. The earliest emailed shipping label that CS #1 had maintained and provided to case agents was addressed to Ortho Lab attn John MARIN and was emailed from LONG using email address illdreams88@gmail.com to CS #1 on June 28, 2021. Through database and record checks, MARIN is listed as the owner of JM Time Corp., Virgo Stones, and Jewelry Company, and Ortho Lab. CS #1 stated that s/he took the FedEx packages containing the US currency, i.e., payment for drug debts, to FedEx mailing facilities in the greater Milwaukee area and mailed them priority overnight to locations in California, primarily the Los Angeles area.

17.     Google is a United States Company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome and a free search engine called Google Search.

18.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device.

19.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google

7

Account. Enterprises may also establish Google Accounts which can be accessed using an email address at the enterprise's domain (e.g. employee[@]company.com).

20.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, some of which are described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

21.     GMAIL: Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

22.     CONTACTS: Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their mobile phone or device address book so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them.

23.     CALENDAR: Google provides an appointment book for Google Accounts through Google Calendar. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or

8

tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device address book so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them.

24.     **GOOGLE KEEP:** Google also provides online to-do lists and notepads for Google Accounts. Google Keep allows users to create notes or lists. These notes can be shared with other users to edit. Users can set notifications at particular dates and times for both tasks and notes. Google preserves tasks and notes indefinitely, unless the user deletes them.

25.     **WEB-BASED CHATS and MOBILE MESSAGING:** Google provides a number of direct messaging services accessible through a browser or mobile application, including Duo, Messages, Hangouts (Chat and Meet), and the now-retired Allo and Chat. These services enable real-time communications. Users can send and receive text messages, videos, photos, locations, links, and contacts from their Google Account using these services. Chat and Hangouts require or required the other user to also have a Google Account. Duo, Messages, and Allo do or did not. Google preserves messages sent through these services indefinitely, unless the user turns off the setting to save conversation history or deletes the message.

26.     **GOOGLE DRIVE:** Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos,

9

videos, PDFs, and text documents, until they hit the storage limit. Users can also set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

27.     GOOGLE DRIVE FOR ANDROID USERS: Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, and file downloads. If a user subscribes to Google's cloud storage service, Google One, they can opt to back up all the data from their device to Google Drive.

28.     GOOGLE PHOTOS: Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

29.     GOOGLE MAPS and GOOGLE TRIPS: Google offers a map service called Google Maps that can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation

10

options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

30.     GOOGLE PLAY: Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

31.     GOOGLE VOICE: Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

32.     GOOGLE CHROME: Google offers a free web browser service called Google Chrome that facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account.

11

33.    YOUTUBE**:** Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, watch history, likes, comments, and change history to posted videos.

34.    INTEGRATION OF GOOGLE SERVICES**:** Google integrates these various services to make it easier for Google Accounts to access the full Google suite of services. Users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

<u>GOOGLE ACCOUNT RECORDS</u>

35.    SUBSCRIBER RECORDS: When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the

user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

36.     ACCESS RECORDS: Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

37.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

38.     BROWSING, SEARCH, and APPLICATION USE HISTORY: Google collects and retains data about searches that users conduct within their own Google Account or using the Google Search service, including voice queries made to Google Assistant. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google

13

Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google also collects and retains data about the voice queries made to its artificial intelligence-powered virtual assistant, Google Assistant, on Android devices and associated it with the registered Google Account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google usually maintains these records indefinitely, unless the user deletes them.

39.     LOCATION HISTORY: Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices, regardless of service usage. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Google maintains these records indefinitely, unless the user deletes it.

40.     ANDROID DEVICE DATA: When an individual uses an Android device for the first time, they are prompted to register the device to a new or existing Google Account. Data about the use of the Android device is saved to the registered Google Account, including device characteristics such as the device serial number, model type/number, and international mobile

14

equipment identity (IMEI). In addition, users may opt-in to Android device backups to Google cloud servers. Android device backups are only saved as a unique backup file if the user subscribes to Google's cloud storage service, Google One. If they do not, data from the device is associated with the registered Google Account and stored with similar data in the Google Account. For example, photos and videos on the device are backed up to Google Photos; contacts are backed up to Google Contacts; events and appointments are backed up to Google Calendar; and files and certain application data are backed up to Google Drive. Google maintains these records indefinitely, though users may delete Android back-up files in the same manner as any other file associated with the relevant Google service.

41.     Google also maintains records of the device characteristics of iPhones used to access Google services, including the make and model of the device. Depending on user settings, those records may be associated with the Google Account logged into the service in use on the device. Google maintains these records indefinitely, unless the user deletes them.

42.     In my training and experience, evidence of who was using a Google Account, and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, where, when, why, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. This can be true even if subscribers insert false information to conceal their identity; this information often nevertheless provides clues to their identity, location or illicit activities.

43.     For example, the stored communications and files connected to a Google account may provide direct evidence of the offenses under investigation. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are

15

often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

44.     In addition, the user's account activity, logs, stored electronic communications, location history, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

45.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

46.     Other information connected to a Google Account may lead to the discovery of additional evidence. For example, the identification of apps downloaded from the Google Play Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity,

16

location information, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

## AUTHORIZATION REQUEST

47.     Based on the forgoing, I request that the Court issue the proposed search warrant.

48.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google, LLC.  Because the warrant will be served on Google, LLC, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A
## Property to Be Searched

1.      This warrant applies to information associated with illdreams88@gmail.com (the

"account"), from June 1, 2021, to present, that is stored at premises owned, maintained,

controlled, or operated by Google, LLC, a company headquartered at 1600 Amphitheatre

Parkway, Mountain View, California.

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be disclosed by Google, LLC (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 21, 2022, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:.

a.      The contents of all emails associated with the accounts, from June 1, 2021 to the present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account status', alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, and files; and

2

e.  All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken.

Google, LLC is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant

**Information to Be Seized by the Government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine), those violations involving Antonio LONG, from June 1, 2021, to the present, including for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  Evidence indicating violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine);

(b)  Evidence indicating preparatory steps taken in furtherance of the criminal scheme under investigation;

(c)  Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(d)  Evidence indicating the email account owner's state of mind as it relates to the crimes under investigation;

(e)  The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s);

3

(f) The identity of the person(s) who communicated with the user IDs: illdreams88@gmail.com about matters relating to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine).

4